IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MUSTAFA-EL K.A. AJALA,
formerly known as Dennis E. Jones-El,

                                                                       OPINION and ORDER

                Plaintiff,

                                                                        13-cv-544-bbc

       v.

KELLI WEST, AMY SMITH,
RICK RAEMISH, TODD OVERBO,
CATHY JESS, PETER HUIBREGTSE,
GARY HAMBLIN, TIM HAINES,
CHARLES COLE, STEVE CASPERSON,
GARY BOUGHTON and ANTHONY BROADBENT,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Pro se prisoner Mustafa-El K.A. Ajala is proceeding on two claims under the free exercise clause, the establishment clause and the equal protection clause: (1) various prison officials refused his requests to be placed on a halal diet from 2006 to 2009; and (2) defendant Tim Haines (the warden) places greater food restrictions on Muslims maintaining a halal diet than he does on Jewish prisoners maintaining a kosher diet. With respect to his second claim, plaintiff alleged in his complaint that the prison's version of the halal diet does not permit him to eat dairy products or eggs and limits his consumption of meat beyond what is required by his faith. He believed that he should be receiving the same packaged meals that kosher prisoners receive because those meals are halal as well.

1

In addition to his claims under the Constitution, plaintiff included a legal theory under the Religious Land Use and Institutionalized Persons Act in his complaint, but I concluded in the order screening the complaint that he could not proceed under that theory for either of his claims. The first claim was about past incidents rather than ongoing violations, which meant that his relief would be limited to money damages and money damages are not permitted under RLUIPA. Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011). With respect to the second claim, plaintiff could not proceed under RLUIPA because one of the elements of the statute is that the defendant is imposing a "substantial burden" on the plaintiff's religious exercise. 42 U.S.C. § 2000cc-1(a). Although plaintiff alleged that the diet he receives is more restrictive than a "true" halal diet, he did not allege that his religious beliefs require him to eat certain foods that he is not receiving, so I could not infer that the diet is substantially burdening his religious exercise. Dkt. #3.

Defendants have moved for summary judgment on both of plaintiff's claims. Dkt. #21. I am granting the motion because the undisputed facts show that plaintiff cannot prevail on either claim against any of the defendants. This conclusion makes it unnecessary to consider defendants' arguments about personal involvement or qualified immunity.

OPINION

A.  Refusal to Provide Halal Diet

Plaintiff's first claim is that various prison officials violated his rights under the free exercise clause, the establishment clause and the equal protection clause by refusing his

requests to be placed on a halal diet from 2006 to 2009. However, the undisputed facts show that defendant Todd Overbo, the prison chaplain, denied plaintiff's requests for a halal diet *with meat*; Overbo did not deny plaintiff's requests for any halal diet. Before 2008, the Wisconsin Department of Corrections did not include meat in the halal diet because the department could not find a food distributor that carried halal meat. Dfts.' PFOF ¶¶ 33-36, dkt. #35. Because plaintiff does not allege that a halal diet must include meat, he cannot argue successfully that his religious exercise was burdened, substantially or otherwise. In fact, plaintiff does not identify any foods that must be included in a halal diet, so defendants would not be violating plaintiff's free exercise rights so long as they gave him a nutritionally adequate diet that did not include restricted foods. Hunafa v. Murphy, 907 F.2d 46, 47 (7th Cir. 1990) (assuming that free exercise clause prohibits prison officials from requiring prisoner to make "an improper choice between adequate nutrition and observance of the tenets of his faith"). See also Nelson v. Miller, 570 F.3d 868, 879–880 (7th Cir. 2009) ("[A] prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition."). In addition, because defendants had a secular reason for providing the vegetarian diet, plaintiff cannot show that defendants were discriminating against him on the basis of religion, in violation of the free exercise clause, the establishment clause or the equal protection clause. Goodvine v. Swiekatowski, 594 F. Supp. 2d 1049, 1058 (W.D. Wis. 2009) (in religious discrimination claim, "the analysis is the same whether the claim is viewed under the establishment clause or the equal protection clause. . . . The question is whether [the defendant] is singling out

3

particular religions for special treatment without a secular reason for doing so.") (citations omitted).

In his proposed findings of fact, plaintiff attempts to challenge defendants' asserted secular reason as well as the nutritional adequacy of the diet he received, but neither attempt is successful. With respect to defendant's secular reason for not including meat in the halal diet before 2008, plaintiff questions defendant's explanation because he "directed the DOC to an additional Wisconsin halal meat distributor right in Green Bay, WI." Plt.'s Resp. to Dfts.' PFOF ¶ 35, dkt. #35. However, plaintiff did not identify the distributor and he has not cited any evidence that the distributor actually could have provided halal meat to the prison, so his allegation does not show that defendants' reason for failing to provide halal meats sooner is pretextual.

With respect to the nutritional adequacy of his diet, plaintiff alleges that he has "suffer[ed] from low Vitamin D" since 2006, Plt.'s PFOF ¶ 111, dkt. #35. However, plaintiff has not adduced any evidence regarding the amount of Vitamin D in his diet now or any other time or that the amount of Vitamin D he receives is below nutritional guidelines. In addition, he has not provided any expert testimony that the cause of his low Vitamin D levels is the lack of sufficient meat in his diet. Finally, he has not adduced any evidence that his low Vitamin D level has caused him any adverse health effects. In fact, plaintiff admits that he has been prescribed vitamin supplements and that his Vitamin D level has improved to a level that is "above the threshold." Plt.'s Dec. ¶ 16, dkt. #30. Accordingly, a reasonable jury could not infer that defendants are violating plaintiff's

4

constitutional rights by refusing to provide him a nutritionally adequate diet.

### B. My Own Meals

With respect to his second claim, I understand plaintiff to be contending that defendants are discriminating against him and other Muslims by refusing to serve him the prepackaged food that kosher prisoners receive called "My Own Meals." Plaintiff alleges that those meals are superior to the diet he receives now because the kosher meals include dairy products and eggs, Trotter Dec., dkt. #32; Damali Dec., dkt. #31, which he does not receive. (To the extent that plaintiff means to allege that, after 2008, prisoners who receive "My Own Meals" receive more meat than prisoners on a halal diet, he does not support that allegation with any evidence.)

There are two problems with this claim. First, the company that makes "My Own Meals" has not certified any of its meals with meat as halal. Rather, only its vegetarian meals are both halal and kosher.

Plaintiff says that he believes that the "My Own Meals" with meat are halal as well, but he has no foundation for that belief. He admits that the requirements for certifying meat as kosher are not the same as certifying meat as halal, Plt.'s Resp. to Dfts.' PFOF ¶¶ 94-95, dkt. #35, so it cannot be inferred that the meat is halal simply because the food is kosher. For example, "Halal law allows certain meats which are prohibited under Kosher law. Kosher law allows certain food additives (alcohol, some glycerin, emulsifiers, and enzymes) which are haram (prohibited and unlawful) under Islamic law." Dfts.' PFOF ¶ 95,

dkt. #35.

Further, the evidence plaintiff cites to support his belief is unhelpful or inadmissible. First, he says that defendants admitted that "My Own Meals" are halal by stating in their answer that they "lack sufficient knowledge or information to form a belief" on that issue. Dkt. #2 at ¶¶ 113-15.  However, Fed. R. Civ. P. 8(b)(5) states that "[a] party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial."

Alternatively, plaintiff cites declarations from two prisoners who aver that they have seen the labels for "My Own Meals" and that the labels indicate that the meals are both halal and kosher.  Trotter Dec., dkt. #31; Damali Dec., dkt. #32.  However, neither witness provided a copy of the label or labels he viewed, so the testimony violates Fed. R. Evid. 1002, which requires a party to submit a document in order to prove the contents of the document.

Defendants did provide copies of some of the labels, which show that only the vegetarian meals are certified as halal. Dkt. #36, exh. 113 and 114.  In addition, defendants submitted a declaration from the president and founder of the company that makes "My Own Meals," who avers that "The My Own Meal® brand has never included Halal-certified meals that contain meat or fish."  Jackson Dec. ¶ 4, dkt. #37.  This is consistent with the information on the "My Own Meal" website, which describes its products as "Refrigeration-Free Glatt Kosher Meals," but not halal.  http://www.myownmeals.com/.  In light of plaintiff's own stated belief that he may not eat food unless it is halal, I cannot conclude that

6

defendants have violated plaintiff's constitutional rights by refusing to provide him meals that the distributor has not certified as halal.

Plaintiff does not argue in the alternative that defendants should find another way to include dairy products and eggs in his diet. Defendants say that they have excluded those items from the halal diet because "[s]ome Muslim adherents find eggs and other dairy products questionable or unacceptable. Therefore, the DOC halal menu does not include eggs or other dairy products to avoid inadvertently serving foods that some Muslims believe are haram (sinful or prohibited). Inmates whose beliefs permit eating eggs and dairy may consume these products from canteen purchases if desired." Dfts.' PFOF ¶ 32, dkt. #35. Plaintiff admits that "[s]ome dairy products such as cheese, yogurt, ice cream, etc., may not be considered Halal under strict interpretation because they contain animal rennet, gelatin or other additives which are not Halal-certified. There is even debate about whether eggs are Halal, because some egg-bearing animals are fed with feed enhanced by animal by-products, or because the conditions of factory farming are considered inhumane." Id. at ¶ 68. Because plaintiff does not develop an argument that the free exercise clause, the establishment clause or the equal protection clause would require defendants to offer different diets for Muslim prisoners who have different interpretations of halal, I do not consider that question. Plt.'s Resp. to Dfts. PFOF ¶ 70, dkt. #35 (not disputing proposed fact that "DOC simply does not have the available resources to accommodate religious diet requests that represent personal preferences, obscure, individualistic beliefs or non-religious dietary practices.")

C. Contamination

Perhaps sensing that he could not prevail on the claims in his complaint, plaintiff raises a new claim in his summary judgment materials, which is that the diet prison officials provide to Muslims is not really halal because it has been contaminated by non-halal food. For example, he states that halal food may not be "served" or "stored" with non-halal food and that defendants are violating that rule. Plt.'s Dec. ¶ 8, dkt. #30. As evidence, he points to a proposed finding of fact in which defendant explain their understanding of halal dietary rules. In particular, they state that "Halal dietary laws do not prescribe special food handling procedures or prohibitions for storing halal foods with non-halal products." Dfts.' PFOF ¶ 32, dkt. #35.

It is well-established that a plaintiff may not use his summary judgment materials to amend his complaint. Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012); Grayson v. O'Neill, 308 F.3d 808, 817 (7th Cir. 2002). Further, the new claim raises an even more fundamental problem, which is that plaintiff does not point to a single instance in which he complained to any of the defendants that he believed his food was not halal because of the way it was prepared, served or stored. Rather, in plaintiff's grievances and religious diet requests, he complained about not receiving meat, dkt. #14, exhs. 100,101 and 102; dkt. #24, exh. 109, and not receiving "My Own Meals," dkt. #14, exh. 103; dkt. #24, exh. 109. (Plaintiff also complained about not being allowed to order dairy products from the canteen, dkt. #14, exh. 104; dkt. #24, exh. 111, but prison officials resolved that issue in plaintiff's favor before he filed this lawsuit, Dfts.' PFOF ¶ 84, dkt. #35, and he did not raise any issues

about the canteen in his complaint or summary judgment materials.).

Plaintiff's failure to raise this issue with prison officials before filing this lawsuit is a problem for two reasons. First, without evidence that plaintiff complained to any of the defendants or other evidence that the defendants knew about plaintiff's beliefs regarding contamination, it cannot be inferred that any of the defendants intentionally violated plaintiff's rights, which is a requirement of every claim for damages brought under the Constitution. United States v. Norwood, 602 F.3d 830, 835 (7th Cir. 2010).

Second, with respect to injunctive relief, plaintiff's failure to give defendants notice of his problem means that his claim is premature. As the Supreme Court explained in Farmer v. Brennan, 511 U.S. 825 (1994),

> That prison officials' current attitudes and conduct must be assessed in an action for injunctive relief does not mean, of course, that inmates are free to bypass adequate internal prison procedures and bring their [constitutional] concerns directly to court. An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity, and any litigant making such an appeal must show that the intervention of equity is required. When a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them. Even apart from the demands of equity, an inmate would be well advised to take advantage of internal prison procedures for resolving inmate grievances. When those procedures produce results, they will typically do so faster than judicial processes can. And even when they do not bring constitutionally required changes, the inmate's task in court will obviously be much easier.

Id. at 847 (internal quotations and citations omitted).

If plaintiff had brought his concerns to the appropriate prison officials, he could have learned more specifically how prison staff are handling halal food and explained to them

9

exactly what he believed they were doing wrong and what they need to do to comply with halal requirements. In response, defendants could have consulted imams or other spiritual advisors as well other prisoners to help them determine whether enough is being done to accommodate prisoners on a halal diet. By raising this issue for the first time in his summary judgment materials, plaintiff has deprived defendants of the opportunity to investigate any potential problems and look for a resolution that balances plaintiff's religious beliefs with the needs of the prison as well those of other prisoners. Accordingly, I decline to consider plaintiff's new claim.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants, dkt. #21, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 19th day of November, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge